We'll now move to the second case on the calendar, which is U.S. v. Safford. All right, Mr. Egan, you've reserved two minutes for rebuttal, I believe. That's correct, Your Honor. Thank you. May it please the Court, James Egan for Kevin Safford. Mr. Safford raises a host of issues challenging the NIT warrant and the government's operation of the Playpen site. As the government notes, many of those issues have been addressed both by this Court and many other circuit courts. Specifically, the territorial argument regarding Rule 41 has been rejected by this Court in Eldridge, so I won't be addressing that. The companion case to Eldridge, Allen, a panel of this Court, in a summary order, rejected some of the suppression issues, mainly the facial challenge and some of the Franks challenge. I guess I'll start with that. I do, however, want to get to the supervised release conditions, but let me just clarify what I think is left of some of these arguments. So with Allen, the only Franks issue that the Court addressed, at least in their summary order, was the change in the images on the home page. They did not address the index argument and the availability up until about February 20th. That is the date they secured the NIT warrant. The Allen Court did not address the anticipatory argument, so that's still available. And then finally, no panel in this Court has addressed the motion to dismiss for outrageous government conduct. However, as the government notes, every other circuit that has addressed the question has rejected it. If there are no questions on those, I'm happy to take them. Let me focus on the conditions. We challenged two of those. The first, condition number three, as written, prohibits Stafford from going, I think, or remaining at any place where it's likely that children will be, sorry, where children are likely to be. And then it lists a category, some category of places. Before you address the merits of those, a question about the standard of review. Both of the conditions that you're challenging were set forth in the pre-sentence investigation report, correct? That's correct. So under this Court's jurisprudence, does that not mean that the review here is for plain error because you had notice and opportunity to object in the district court? That's correct. Okay. There is, however, a relaxed standard in certain circumstances. The government argues against that in this case because it was made available. I don't think it much matters because in Peterson's court made clear that while conditions that prohibit a person like Mr. Stafford from going to places where children congregate is permissible, they, I think, made clear that places where children are likely to be would be too broad. Is there really any difference between those two? Yeah. Tell me a place where children are likely to be as opposed to likely to congregate. I think pretty much anywhere you would go, Your Honor.  Courthouse. Grocery stores. Well, courts maybe, but not this court, but other courts perhaps, municipal courts, where parents don't have child care will bring their kids, I assume. Hospitals, grocery stores, gas stations, anywhere in the country. Those are places where they're likely to be but not likely to congregate? Correct. I think the definition of congregate is to come together as a group, right, for a common goal or activity. Didn't this court in McMillan actually use the terms interchangeably? And if that is the case, how can it rise to the level of plain error to impose one as opposed to the other? Right. I think the court was using shorthand at that point, but I think it was making clear that, for example, it was not overriding Peterson, which Peterson said that national parks, Yellowstone I believe was an example there, would not be permissible to prohibit him from going to Yellowstone National Park, which, of course, children are likely to be at Yellowstone National Park, although not to congregate potentially. So that would be a distinction that would be left over after McMillan. I don't think McMillan is saying that it's permissible to impose this condition as broadly as written. If taken literally, it really does prohibit him from going outside of his house  The next condition, that one restricts him from going to places for the primary purposes of observing or contacting children. It should be said, I guess, that Mr. Safford has never been alleged, or there's no information to indicate that he has ever committed a hands-on offense or put himself in a position where that might be possible. So I'm not sure why this condition is necessary. The observational portion of it, certainly. I don't know what observed means in this context. Does it mean to merely look at? Does it mean to examine in some fashion? I give the example of a play in which one of the actors may be a child. At that moment, the child appears on stage. Is the primary purpose to observe the child or to observe an actor in the play? It's not clear. There's a dichotomy there, I suppose, that the condition doesn't clarify. I'll go back to dismissal of the indictment for outrageous government conduct, since that hasn't been addressed at all in this court. The lead case, I suppose, is Chin, which deals with third-party victims. I think Chin is distinguishable because, in that case, the harm to the child and the crime, there was a direct correspondence. There was no, as in this case, there is not a direct correspondence between the harm and the crime. There is a great deal of harm that is not covered by the crime. And the government, nevertheless, wants to use the NIT warrant to effectively distribute and allow it to be distributed, child pornography. But not to entrap, right? I mean, it would seem sort of strange to say that the consequence of outrageous government conduct would be to provide a windfall to the people who were accessing the very site that the government was just continuing. Yeah. I understand that, Your Honor. But I think there's nobody else that's going to present this argument. Who else is going to enforce it? Well, the victim. I imagine the victims of child pornography. Well, I don't know that the victims are going to be notified, Your Honor. This isn't a normal case where the government notifies victims of crimes, sure. But victims that aren't part of criminal cases, I don't know that the government is going to notify them. But the victims whose images, I mean, at least some of the images that were the subject of this indictment were notified, right? Sure. And they were given a misdemeanor order of pay restitution eventually. Right. And those victims, I assume, have received compensation. But the victims who are not compensated, of which I'm sure there are many, are not on notice that they were part of this. My point is those victims could theoretically challenge the government's operation. Could bring a Bivens action or something. The governments that are noticed, you're saying. Well, there's at least some of them are aware. I'm not sure which of the images that made it into the indictment here that were the subject of this sentence were from the playpen site while the government was operating it. So it's three? In any event, those folks, they could bring a suit against the government for this outrageous conduct, right? I suppose they could, yeah. But I don't know that they'd have as much interest at that point because they've already been compensated. But if that's the standard, I suppose that's enough. But I don't think it is because you have a whole pool of individuals who are further in perpetuity being reharmed by virtue of the operation of the site. That has nothing, at least immediately, to do with Mr. Stafford. Are there any cases in which there was an appellate ruling or a district ruling that was referred with respect to outrageous government misconduct? No. As Judge Sutton recently noted, Sixth Circuit case, it's, paraphrasing, it's a burr that's much discussed but never seen. So, no, the answer is no. But it seems to me that this might be. But even hypotheticals are typically things like torture, right? I mean, it's not situations where the government. Yeah, courts distinguish between third-party harm, like in this case, or direct government intrusion of property or person. So in that case, there is, Your Honor, Judge Jacobs, where the government, in one case, searches the rectum of a defendant or pumps the stomach where there is a direct intrusion of the body. But that's a separate line of cases. I'm talking about third-party where third-party victims are not part of the case but are nevertheless might be a basis to dismiss the indictment. And in those line of cases, there are none that have succeeded. Okay. All right. Thanks very much, Mr. Egan. We have a few minutes left. Can you reserve a few minutes when I hear from Ms. Schoenberger? May it please the Court, Karina Schoenberger for the United States. The district court below appropriately denied the suppression motion, and largely the arguments that are raised on appeal have been laid to rest by this Court's decision in Eldred and in the summary order in Allen. The district court also appropriately denied the motion to dismiss the indictment. The question of whether the government's investigation into the playpen website that was being operated on the dark web rose to the level of outrageous conduct has been litigated all across the country. Not a single federal court that's looked at this question has determined that the conduct rose to that level, and there's no basis for this court to decide otherwise. With respect to the conditions of supervised release here, they were supported by the record, and they were explained by the district court as to why they were appropriate in this case. How do you square that argument with this Court's decisions in Wolfe and Blau, which remanded for lack of an explanation in similar circumstances where there was no, you know, the offense was not a contact offense and the court found that there was inadequate explanation for why these kinds of restrictions were appropriate? Here the district court explained that its sentence in its entirety was based in part on the defendant's years-long addiction to pornography and also focused on the fact that the defendant had been able to comply with pre-trial conditions of release that were more stringent than these ones and the importance of continuing to have supervision after his well-below-guidelines term of imprisonment to ensure that he was not tempted to return to criminal conduct. But the rule requires a reasonable relationship between the conditions of supervised release and the offense for the offender, correct? That's correct. So how could the fact that the offender had previously complied with even more onerous restrictions, which may or may not have been appropriate, make it reasonably related? Because those conditions would not be in play when he was out after he was in prison. So to ensure that he continued to behave lawfully, there were other conditions, and specifically the ones we were talking about, that restrict this defendant's access to minors. And it's certainly true that there's nothing in the record to indicate that Mr. Stafford had contact, hands-on contact or sexual abuse with children. But certainly he displayed a sexual interest in children and a prurient viewing of them that would make it entirely reasonable to determine that he should not have access to children. But wouldn't that argument have been true in Wolfe and Blau as well? It may have been. I think that the ‑‑ but I think that there's more here based on what the district court said. I think that in both of those cases there was even less of an explanation that was here. And to be clear, in those cases the remand was for the purposes of allowing the district court to provide a further explanation and to provide more of a record to review on appeal. To the extent that it's determined that the district court didn't sufficiently explain these two conditions, the government would submit that the appropriate remedy would also be to remand for further explanation, not to vacate the conditions. The conditions that are appropriate, condition number three, which talks about going to places where children are likely to be, is barely distinguishable from the condition that was upheld in McMillan. McMillan also involved a defendant who was convicted of possession of child pornography. There was no evidence that there was hands-on contact with respect to that defendant. And, in fact, Mr. McMillan was subject to a lifetime of supervised release, not a 20‑year term such as Mr. Safford is. And with respect to condition number four, it has a common sense meaning that going someplace for the primary purpose of observing or contacting children means that you're going someplace to observe and contact children. And importing the phrase primary purpose into this condition shows ‑‑ And he go to the beach? It depends what his purpose is. And that's what the reason that this is an appropriate condition is because it includes this mens rea requirement. Mr. Safford would know whether his purpose was to go to observe and contact children or not. And it is a mens rea requirement like that that would mitigate any sort of vagueness concern. And, of course ‑‑ To go back a moment to the network investigative techniques, I mean, the matter was obviated here by the good faith ruling. And it seems to have been obviated in a lot of cases by good faith ruling. Has anybody ‑‑ have we ruled on whether there is probable cause under those circumstances? In Eldred, when the court ‑‑ That's a summary order. Eldred is published. Allen is a summary order. Right. But, I mean, Eldred didn't rule on whether there was probable cause. Eldred does say that none of the four Leon factors, which would be the exceptions to the good faith exception, are present in this case. Now, Mr. Eldred didn't advocate for all four of them. The court notes that he just talks about the facial validity of the warrant and not about the probable cause prong. But the court does say that none of the four are present, which would suggest that probable cause was not an issue that would prevent the application of the good faith exception to the exclusionary rule. And then Allen, of course, is unpublished, so non‑precedential, but it does talk about the basis of probable cause here, among other things. Well, it's, you know, I mean, it's a summary order, so it's not precedential. So, basically, there's nothing to say whether this network investigative technique is supportable, supports probable cause. If the court goes back to the record and wants to address that question anew, certainly there's basis to find that there's probable cause, the supporting. That may be, but it just seems odd to keep saying that the government acts in good faith, not knowing a thing that we never say. The government acts in good faith on the basis of the fact that it thinks that there's probable cause, but we never say whether there is or isn't. Well, this court has not addressed the question in a published opinion. Yes. Other courts have. And, again, if that question is raised here, so if it needs to be answered, then there are facts in the record showing that there, in fact, was probable cause to determine that users of the Playpen website were using it for the purposes of violating child pornography laws. And those things include, as noted in the Allen summary order, the suggestive name of the website, the very circuitous route that any user had to use, not only to find the website on the dark web in the first place, but then to register and enter the website. It's virtually impossible for someone to have accidentally stumbled into the Playpen website. And there's also language suggesting, before you even enter the website, that it's for the purpose of file sharing and numerous ways in which it's conveyed that anonymity is a number one priority and that users should be very careful to remain anonymous. So to the extent that that question is answered in this case, there is a great deal of reason to find that there was probable cause. There's some suggestion in Mr. Safford's brief that there's a separate question about whether this was some sort of anticipatory warrant that couldn't be satisfied because of the change in the logo on the website. The government addresses that question. The two figures becoming one. Exactly. And that that was not a basis for when the warrant was triggered and the website was identified by its very unusual URL address and not strictly by the way that it appeared. Unless there are other questions, I just note for the Court that the two conditions of supervised release that are raised on this appeal are also raised in three other cases that are pending before this Court, United States v. Robinson, which is 19-1496, United States v. Palistri, which is 19-1439, and United States v. Olson, which is 19-1104. And with respect to the outrageous conduct argument and the arguments related to the suppression decision, those are pending in United States v. Carrejo, which is number 18-511. That's scheduled for oral argument on March 5th of this year. Thank you. Okay. Thank you very much. Mr. Egan, you have two minutes, I think. Two minutes. Yes. Thank you, Your Honor. Those cases, I believe, are not yet been submitted, right? Correct. So this is the first case that addresses the conditions that's been heard or submitted. McMillan, the actual condition was congregate. There's some language that talks about likely to be. If likely to be equals congregate, then it would be better if you make it clear. Okay. Then I don't have a problem with it, right? Well, I mean in this case. The condition then says including parks, schools, playgrounds, and child care facilities. So it sort of gives a list of the types of things that are in mind. Sure. So it doesn't mean gas station. Well, it doesn't include gas station. It doesn't include some of the other places that you mentioned. Right. But I'd like that to be clear before Mr. Stafford is released in May and has to deal with his probation officer. Wouldn't that request be met? I mean, if we issue a decision that says this condition is okay because likely to be is synonymous with likely to congregate, doesn't that effectively grant you the relief that you're seeking? If you make that clear, yes, Your Honor. Yeah. As far as the probable cause issue, Judge Jacobs, I believe this is the first case that we deal with probable cause in a case that's about access to child pornography in which the website, the home page, doesn't make it unabashedly clear, for example, in Martin. So the government's relying on sort of the surrounding circumstances about how a person gets to the website and then some indicia about anonymity once there to infer that the person that would get to the website would have knowledge about what's on the other side of it. As the anticipatory warrant issue, the government's arguments basically are premised on this idea of stasis on both sides of the wall, that is that people on the other side of the wall wouldn't put non-illegal images or discussions that an innocent person might want to access or that on the pre-access side of the wall that people wouldn't discuss it as containing innocent material and therefore that a person might go through the entry page for a perfectly legal purpose. Thank you, Your Honor. Okay. Thank you, Mr. Egan. We'll reserve decision.